LAUREL EMPLOYMENT LAW
Joshua I. White (State Bar No. 278166)
William M. Hogg (State Bar No. 338196)
808 Wilshire Boulevard, Suite 200
Santa Monica, California 90401
Tel.: (323) 551-9221
Fax: (310) 564-4093
josh@laurelemploymentlaw.com
william@laurelemploymentlaw.com

*Attorneys for Camacho & the Salaried Employees*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## EASTERN DIVISION

IVAN CAMACHO, Individually and for Others Similarly Situated,

Plaintiff,

vs.

CARGO SOLUTION EXPRESS, INC.,

Defendants.

Case No. ___________________

**CLASS AND COLLECTIVE ACTION COMPLAINT:**

(1) Fair Labor Standards Act;
(2) Failure to Pay Overtime (Cal. Lab. Code § 510);
(3) Failure to Authorize and Permit and/or Make Available Meal and Rest Periods (Cal. Lab. Code §§ 226.7 and 512);
(4) Failure to Provide Timely and Accurate Itemized Wage Statements (Cal. Lab. Code § 226);
(5) Waiting Time Penalties (Cal. Lab. Code §§ 201-203); and
(6) Unlawful Business Practices (Cal. Bus. & Prof. Code §§ 17200 *et seq.*).

**Demand for Jury Trial**

Plaintiff Ivan Camacho ("Camacho"), Individually and on behalf of others similarly situated, complains and alleges as follows:

## SUMMARY

1. Camacho brings this class and collective action to recover unpaid wages, other damages, and restitution from Cargo Solution Express, Inc. ("CSE").

2. Camacho worked for CSE as a yard driver in Fontana, California.

3. Like the Salaried Employees (defined below), Camacho regularly worked more than 8 hours in a day and 40 hours in a week.

4. In fact, Camacho and the other Salaried Employees typically work 10-to-12 hours a day for up to 6 days a week.

5. But CSE never paid them overtime compensation.

6. Instead of paying overtime, CSE misclassifies Camacho and the other Salaried Employee as exempt employees and pays them a salary with no overtime compensation.

7. CSE's salary pay scheme violates the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* by depriving these employees (Camacho and the putative Collective Members) of overtime wages for all hours worked in excess of 8 hours in a day and/or 40 hours in a workweek.

8. CSE's salary pay scheme also violates various provisions of the California Labor Code and applicable IWC Wage Orders by depriving these employees (Camacho and the putative California Class Members) of overtime wages at 1.5 times their regular rates of pay for all hours worked in excess of 8 hours in a day and/or 40 hours in a workweek, and of double time wages for all hours worked

in excess of 12 hours in a day.

9. Further, in addition to failing to pay Camacho and the California Class Members overtime wages, CSE also fails to provide these employees with compliant meal and rest periods.

10. Instead, CSE requires these employees to remain on-duty and to perform work throughout their shifts and fails to provide them with *bona fide*, timely, and compliant meal and rest periods.

11. Despite depriving Camacho and California Class Members of their required meal and rest periods, CSE does not pay these employees the required premium pay for each denied meal and rest period in violation of California law.

12. CSE likewise fails to provide timely, accurate, and compliant wage statements to Camacho and California Class Members in violation of California law.

## JURISDICTION & VENUE

13. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

14. The Court has supplemental jurisdiction over the state-law claims because they arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

15. This Court has general personal jurisdiction over CSE because CSE is a California corporation which maintains principal place of business in San Bernardino County, California.

16. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because CSE resides in this District.

## Parties

17. Camacho worked for CSE as a yard driver in Fontana, California from approximately March 2025 to September 2025.

18. Throughout his employment, CSE classified Camacho as exempt from overtime and paid him on a salary basis with no daily or weekly overtime compensation.

19. Throughout his employment, CSE failed to provide Camacho with compliant meal and rest periods and failed to pay him the required premium pay for each meal and rest period CSE denied him.

20. Camacho brings this Action on behalf of himself and other similarly situated yard drivers and short-haul drivers of CSE who were misclassified as exempt and paid on a salary basis with no overtime compensation.

21. Camacho's written consent to join this collective action is attached as **Exhibit 1**.

22. CSE uniformly misclassifies these employees as exempt from overtime and pays them a salary with no overtime compensation in violation of the FLSA and California wage laws.

23. Likewise, CSE uniformly deprives these employees of compliant meal and rest periods but fails to pay Camacho and the California Class Members the requisite premium pay for each meal and rest period CSE denies them in violation of California wage and hour law.

24. The proposed FLSA Collective of similarly situated employees is defined as:

> **All current and former yard drivers, short-haul drivers, or others with similar job duties employed by CSE in the United States who were classified as exempt from overtime and paid a salary with no overtime compensation at any time from three (3) years before the filing of this Complaint through final resolution of this Action (the "Collective Members").**

25. Camacho also seeks to represent a class and/or sub-class(es), as may be appropriate, pursuant to Federal Rule of Civil Procedure 23 with respect to his state law causes of action.

26. The proposed Class of similarly situated employees is defined as:

> **All current and former yard drivers, short-haul drivers, or others with similar job duties employed by CSE in California who were classified as exempt from overtime and paid a salary with no overtime compensation at any time from four (4) years before the filing of this Complaint through final resolution of this Action (the "California Class Members").**

27. The Collective Members and California Class Members are collectively referred to as the "Salaried Employees."

28. CSE is a California corporation that maintains its headquarters in San Bernardino County, California.

29. CSE may be served with process by serving its registered agent: **Balwinder Kang, 14587 Valley Boulevard, Fontana, California 92335**.

## FLSA COVERAGE

30. At all relevant times, CSE was an employer within the meaning of Section 3(d) of the FLSA. 29 U.S.C. § 203(d).

31. At all relevant times, CSE was an enterprise within the meaning of Section 3(r) of the FLSA. 29 U.S.C. § 203(r).

32. At all relevant times, CSE was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA. 29 U.S.C. § 203(s)(1).

33. At all relevant times, CSE has had an annual gross business volume of not less than $500,000 each year.

34. At all relevant times, CSE has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or were produced for commerce, such as personal protective equipment, computers, and cell phones.

35. At all relevant times, Camacho and the putative Collective Members were engaged in commerce or in the production of goods for commerce.

36. CSE uniformly misclassifies Camacho and the putative Collective Members as exempt from overtime and pays them a salary with no overtime compensation.

37. CSE's exempt misclassification and salary with no overtime pay scheme, which deprives Camacho and the putative Collective Members of overtime compensation when they work more than 40 hours in a workweek, is a violation of the FLSA, 29 U.S.C. § 207(a) & (e).

## FACTUAL ALLEGATIONS

38. CSE is a trucking and logistics company that maintains its principal place of business in Fontana, California, and operates additional locations throughout the country.

39. CSE has been operating for over 20 years "to produce seamless and efficient supply-chain solutions that outshine [its customers'] expectations."[1]

40. CSE offers "over-the-road and rail shipping, [and] also have warehousing and distribution capabilities to provide an efficient supply chain."[2]

41. CSE maintains terminals in (i) Fontana, California, (ii) Cherry Hill, New Jersey, (iii) Markham, Illinois, (iv) Columbus, Ohio, (v) Burleson, Texas, (vi) McDonough, Georgia, (vii) Elizabethtown, Kentucky, (viii) Memphis, Tennessee, and (ix) Grantville, Pennsylvania.[3]

42. In order to provide the transportation services at these terminals across the country, CSE hires yard drivers and other short-haul drivers like Camacho and the Salaried Employees.

43. CSE uniformly classifies these Salaried Employees as exempt and pays them a salary with no overtime compensation.

44. While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practices for similar work.

45. For example, Camacho worked for CSE as a yard driver in Fontana,

---

[1] https://cargosolutionexpress.com/about-us/ (last visited Nov. 14, 2025).
[2] https://cargosolutionexpress.com/about-us/ (last visited Nov. 14, 2025).
[3] https://cargosolutionexpress.com/our-locations/ (last visited Nov. 14, 2025).

California from approximately March 2025 through September 2025.

46. Throughout his employment, CSE classified Camacho as exempt from overtime and paid him a salary with no overtime compensation.

47. Camacho's job duties were not exempt in nature.

48. Rather, Camacho's primary job duties consisted of moving trailers, inspecting equipment, assisting warehouse workers, connecting trailers and other equipment, maintaining equipment, and performing manual labor.

49. Camacho did not cross state lines while driving and his driving activities did not exceed a 150-mile radius from the Fontana facility.

50. Camacho and the other Salaried Employees worked under CSE's uniform exempt misclassification and salary with no overtime pay scheme.

51. As yard drivers and short-haul drivers, Camacho's and Salaried Employees' primary responsibilities included moving trailers, inspecting equipment, assisting warehouse workers, connecting trailers and other equipment, maintaining equipment, and performing manual labor.

52. Upon information and belief, the Salaried Employees do not cross state lines while driving and their driving activities do not exceed a 150-mile radius from the facilities where they begin their workdays.

53. As yard drivers and short-haul drivers, Camacho and the other Salaried Employees perform non-exempt job duties including performing manual labor, driving, and do not work in an office.

54. Camacho's and the other Salaried Employees' job functions were primarily technical in nature, requiring little to no official training, much less a

college education or other advanced degree.

55. CSE uniformly subjects Camacho and the other Salaried Employees to policies and procedures which dictate their day-to-day activities.

56. The short-range driving work Camacho and the other Salaried Employees perform is an essential and integral part of CSE's core business.

57. Camacho and the other Salaried Employees are "line employees" of CSE.

58. No advanced degree is required to become a short-range driver for CSE.

59. Being a short-range driver for CSE does not require specialized academic training as a standard prerequisite.

60. Camacho and the other Salaried Employees do not have any supervisory or management duties.

61. To the extent Camacho and the other Salaried Employees make "decisions," such decisions do not require the exercise of independent discretion and judgment.

62. Instead, Camacho and the other Salaried Employees apply well-established techniques and procedures, and use established standards to do their driving jobs.

63. Camacho and the other Salaried Employees do not set the techniques and procedures utilized to perform their job duties and do not set quality standards.

64. CSE's short-range drivers, including Camacho and the other Salaried Employees, are not allowed to deviate from the techniques and procedures utilized to perform their job duties or from any quality standards.

65. As short-range drivers, Camacho and the other Salaried Employees are not subject to the Hours-of-Service Regulations.

66. With these job duties, Camacho and the other Salaried Employees are clearly non-exempt employees under the FLSA and California wage laws and, therefore, entitled to overtime compensation.

67. But CSE does not pay Camacho and the putative Collective Members overtime compensation when they work in excess of 40 hours in a workweek in violation of the FLSA.

68. Likewise, CSE does not pay Camacho and the California Class Members overtime compensation when they work in excess of 8 hours in a day and/or in excess of 40 hours in a workweek in violation of California wage laws.

69. This is despite Camacho and the other Salaried Employees regularly working 10-to-12 hours a day for 5-to-6 days a week.

70. Camacho worked more than 8 hours in a least one workday during the four years before this Complaint was filed.

71. Likewise, each putative California Class Member worked more than 8 hours in at least one workday during the four years before this Complaint was filed.

72. Camacho worked more than 40 hours in at least one workweek during the three years before this Complaint was filed.

73. Likewise, each putative Collective Member worked more than 40 hours in at least one workweek during the three years before this Complaint was filed.

74. Upon information and belief, Camacho worked at least 60 recorded hours during the week of September 13 to September 19, 2025.

75. Camacho, however, was not paid time-and-a-half for the (at least) 20 hours beyond 40 which he worked during the week of September 13 to September 19, 2025.

76. Camacho was likewise not paid time-and-a-half for his hours worked over 8 each workday that he worked during the week of September 13 to September 19, 2025.

77. Instead, Camacho was paid his straight-time base rate of pay for all hours worked during the week of September 13 to September 19, 2025. His rate of pay did not increase when he worked over 8 hours in a day or 40 hours in the week.

78. Camacho was likewise denied, and was prevented from taking, a 30-minute meal period within the first 5 hours of work during each workday of the week of September 13 to September 19, 2025.

79. And Camacho was denied, and was prevented from taking, a second 30-minute meal period during his workdays in which he worked at least 10 hours during the week of September 13 to September 19, 2025.

80. Camacho was also denied, and was prevented from taking, a 10-minute rest period for every 4 hours of work each workday during the week of September 13 to September 19, 2025.

81. Despite being denied timely or compliant meal and rest periods each workday during the week of September 13 to September 19, 2025, CSE did not pay Camacho the required premium pay.

82. CSE does not pay these employees overtime compensation.

83. Rather, under CSE's uniform exempt misclassification and salary with

no overtime pay scheme, Camacho and the other Salaried Employees are denied overtime compensation when they work in excess of 40 hours in a week in violation of the FLSA.

84. Under CSE's uniform exempt misclassification and salary with no overtime pay scheme, Camacho and the California Class Members are denied overtime compensation when they work in excess of 8 hours in a day and/or 40 hours in a week in violation of the California Labor Code.

85. CSE knows Camacho and the other Salaried Employees routinely work more than 8 hours in a day, and often work 10-to-12 hours in a day, because CSE expects and requires these employees to do so.

86. CSE is also provided constructive notice that Camacho and the other Salaried Employees work such long hours, because CSE maintains standard schedules, truck logs, and other objective data from which it can tell the hours Camacho and the other Salaried Employees perform compensable work.

87. But CSE does not pay Camacho and the other Salaried Employees overtime wages for the overtime hours they work in a day or week in violation of the FLSA and/or California wage laws.

88. When Camacho and the California Class Members worked more than 8 hours in a workday, CSE did not pay then 1.5 times their regular hourly rate for all overtime hours worked.

89. Additionally, when Camacho and the California Class Members worked more than 12 hours in a workday, CSE did not pay them double their regular hourly rate for all such "double time" hours worked.

90. In addition to depriving Camacho and the California Class Members of overtime wages, CSE also fails to provide Camacho and the California Class Members with compliant meal and rest periods.

91. Instead, CSE requires Camacho and the California Class Members to work continuously throughout their shifts, and these employees are never fully relieved of all their duties for 30 consecutive minutes.

92. CSE expects and requires California Class Members, including Camacho, to be available to work during their entire shifts, even during any attempted meal and rest breaks.

93. CSE fails to pay Camacho and the California Class Members premium wages for their missed breaks in violation of California law.

94. CSE also does not provide Camacho and the California Class Members with accurate itemized wage statements as required by California law.

95. The wage statements provided to Camacho and the California Class Members are not accurate because they do not reflect the actual hours worked, overtime wages earned, gross wages earned, or net wages earned.

96. As a result of CSE's misclassification of Camacho and the California Class Members as exempt from overtime when such employees are properly categorized as non-exempt, the wage statements provided by CSE do not contain accurate number of hours worked, and do not accurately reflect the actual gross wages earned, overtime wages earned, premium pay earned, and/or actual net wages earned.

97. CSE knew, or should have known, it was subject to the FLSA and

California wage laws, including their respective overtime provisions.

98. CSE knew, or should have known, the FLSA and California wage laws require it to pay employees, including Camacho and the other Salaried Employees, overtime wages at rates not less than 1.5 times these employees' regular rates of pay for all hours worked in excess of 40 hours in a workweek.

99. CSE knew, or should have known, California wage laws require it to pay employees, including Camacho and the California Class Members, overtime wages at rates not less than 1.5 times these employees' regular rates of pay for all hours worked in excess of 8 hours in a workday and double time wages at rates not less than 2 times these employees' regular rates of pay for all hours worked in excess of 12 hours in a workday.

100. CSE knew, or should have known, Camacho and the California Class Members worked more than 8 hours in a day because CSE expected and required them to do so.

101. CSE knew, or should have known, Camacho and the other Salaried Employees worked more than 40 hours in a week because CSE expected and required them to do so.

102. CSE knew, or should have known, Camacho and the other Salaried Employees were non-exempt employees and, therefore, entitled to overtime compensation.

103. CSE knew, or should have known, California wage laws require it to provide California employees, including Camacho and the California Class Members, a 30-minute meal period when they work more than 5 hours in a day, as

well as a second 30-minute meal period when they work more than 10 hours in a day.

104. CSE knew, or should have known, Camacho and the California Class Members work continuously throughout their shifts and are deprived of compliant *bona fide* meal periods.

105. CSE knew, or should have known, California wage laws require it to provide California employees, including Camacho and the California Class Members, a 10-minute rest period for every 4 hours of work.

106. CSE knew, or should have known, California wage laws require it to pay California employees, including Camacho and the California Class Members, one hour of premium pay at their regular rates of pay for each workday that a compliant meal and/or rest period is not timely provided.

107. CSE knowingly, willfully, and/or in reckless disregard carried out these illegal policies and practices that deprived Camacho and the other Salaried Employees of overtime compensation and/or meal and rest period premium pay in violation of the FLSA and/or California wage laws.

108. Nonetheless, CSE failed to pay Camacho and the other Salaried Employees overtime compensation for all hours worked.

109. Likewise, CSE failed to pay Camacho and the California Class Members premium pay for the meal and rest periods CSE illegally denied them.

110. CSE's common course of wage-and-hour abuse includes routinely failing to maintain true and accurate records of the hours worked by Camacho and the other Salaried Employees.

111. In particular, CSE failed to record and maintain hours that Camacho

and the other Salaried Employees worked during their shifts due to CSE's misclassification scheme, as well as during missed meal and rest periods.

112. CSE's failure to pay Camacho and the other Salaried Employees overtime pay was neither reasonable, nor was the decision not to pay these employees overtime compensation made in good faith.

113. Likewise, CSE's failure to pay Camacho and the California Class Members premium pay for the missed meal/rest periods was neither reasonable, nor was the decision not to pay these employees premium pay for their denied meal/rest periods made in good faith.

114. Further, CSE did not provide Camacho and California Class Members with full payment of all wages owed at the end of employment.

115. As these workers are owed for unpaid overtime wages and premium wages when their employment ends, and these amounts remain unpaid under CSE's policies and practices, CSE fails to pay all wages due upon termination. As a consequent, CSE is subject to waiting time penalties.

116. CSE's violations of the FLSA and California wage laws was willful, carried out in bad faith, and caused significant damages to these workers.

## FLSA Collective Action Allegations

117. Camacho brings his FLSA claim as a collective action under 29 U.S.C. § 216(b).

118. Per 29 U.S.C. § 216(b), this Action may be brought as an "opt-in" collective action for the FLSA claims asserted by Camacho because his claims are similar to the claims possessed by the Collective Members.

119. The putative Collective Members were uniformly victimized by CSE's illegal misclassification and salary with no overtime pay scheme, which are in willful violation of the FLSA.

120. Other putative Collective Members worked with Camacho and indicated they were paid in the same manner and were subject to CSE's same illegal policies.

121. Based on his experiences with CSE, Camacho is aware CSE's illegal practices were imposed on the putative Collective Members.

122. The putative Collective Members are similarly situated in all relevant respects.

123. Even if the precise job duties and locations might vary somewhat, these differences do not matter for the purposes of determining their entitlement to overtime compensation.

124. Therefore, the specific job titles or precise job locations of the various members of the putative Collective do not prevent collective treatment.

125. Rather, the putative Collective is held together by CSE's uniform salary with no overtime pay scheme that systematically deprived Camacho and the putative Collective Members of overtime wages when they worked more than 40 hours in a week.

126. The proposed Collective Members are defined, *supra*, at Paragraph 24.

127. The putative Collective Members perform or have performed the same or similar job duties with CSE as Camacho.

128. The putative Collective Members regularly work or have worked more

than 40 hours during a workweek during their employment with CSE.

129. The putative Collective Members are similarly misclassified as exempt from overtime like Camacho.

130. CSE's failure to pay overtime compensation as required by the FLSA resulted from generally applicable policies and practices, and di not depend on the personal circumstances of the Collective Members.

131. Camacho's and putative Collective Members' claims arise from a common nucleus of operative facts; namely, CSE's misclassification as exempt with no overtime pay scheme.

132. CSE's FLSA liability is based on a systematic course of wrongful conduct that caused harm to all putative Collective Members.

133. CSE had a plan, policy or practice of misclassifying short-range drivers like Camacho and the putative Collective Members as exempt from overtime and thereby failing to pay those workers overtime wages when they worked in excess of 40 hours in a workweek.

134. As such, the Collective of similarly situated potential plaintiffs is properly defined as stated *supra*, at Paragraph 24.

135. The precise number of putative Collective Members, as well as their names and contact information, is readily available and identifiable from CSE's personnel and payroll records.

## RULE 23 CLASS ACTION ALLEGATIONS

136. Camacho brings his California wage-and-hour claims and/or his claim under the Business and Professions Code §§ 17200, *et seq.*, as a class action pursuant

to Federal Rule of Civil Procedure 23.

137. The proposed class and/or any subclass(es) are maintainable pursuant to Fed. R. Civ. P. 23(a), as well as Fed. R. Civ. P. 23(b)(1) and/or (b)(3).

138. The putative Class Members were uniformly victimized by CSE's illegal misclassification and salary with no overtime pay scheme, which are in willful violation of California law.

139. The putative Class is properly defined *supra*, at Paragraph 26.

140. This Action has been brought and may properly be maintained as a class action because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable.

141. Camacho is informed and believes that the number of potential Class Members exceeds 50.

142. This volume makes bringing the claims of each individual member of the Class impracticable.

143. Likewise, joining each individual member of the Class as a plaintiff in this action is impracticable.

144. The identities of the Class will be determined from CSE's records, as will the compensation paid to each of them.

145. As such, a class action is a reasonable and practical means of resolving these claims.

146. To require individual actions would prejudice both the Class Members and CSE.

147. There are questions of law and fact common to Camacho and the Class

Members that predominate over any questions affecting only individual members of the Class.

148. These common questions of law and fact include, but are not limited to:

a. Whether CSE misclassified Camacho and the Class Members as exempt from overtime in violation of California law;

b. Whether Camacho and the Class Members performed primarily non-exempt job duties;

c. Whether CSE engaged in a policy or practice of failing to pay Camacho and the Class Members overtime wages, at either one and one-half times or double the regular rate of pay, in violation of California law;

d. Whether CSE failed to authorize and permit, make available, and/or provide Camacho and Class Members with timely meal and rest periods which they are entitled in violation of California law;

e. Whether CSE failed to pay Camacho and the Class Members the requisite premium pay for each workday that a meal and/or rest period was denied in violation of California law;

f. Whether CSE failed to provide Camacho and the Class Members with timely, accurate and compliant itemized wage statements in violation of California law;

g. Whether CSE failed to timely pay Camacho and the Class Members for all wages owed upon termination of employment in violation of California law;

h. Whether CSE's violations of the California wage laws resulting from a continuing course of conduct;

i. Whether CSE's decision to pay Camacho and the Class Members overtime compensation was made in good faith;

j. Whether CSE's violations of the California wage laws were willful and knowing;

k. Whether CSE violated the Business and Professions Code §§ 17200 *et seq.* by:

i. Misclassifying Class Members as exempt from overtime;

ii. Failing to properly pay overtime compensation, at either one and one-half times or double the regular rate of pay, to Class Members;

iii. Failing to authorize and permit, make available, and/or provide Class Members with timely meal and rest periods to which they are entitled;

iv. Failing to pay premium pay penalties to Class Members for meal and rest period violations;

v. Failing to provide Class Members with timely, accurate itemized wage statements; and

vi. Failing to pay Class Members for all wages upon termination of employment; and

vii. The proper formula for calculating restitution, damages and penalties owed to Camacho and the Class as alleged herein.

149. Camacho's claims are typical of the Class Members' claims.

150. CSE's common course of conduct in violation of California law as alleged herein caused Camacho and the Class Members to sustain the same or similar types of injuries and damages.

151. Camacho's claims are thereby representative of and co-extensive with the claims of the putative Class.

152. Camacho seeks relief for California state law violations perpetrated by CSE. In that sense, Camacho does not have any conflicts of interest with other Class Members and will prosecute the vase vigorously on behalf of the Class.

153. Counsel representing Camacho is competent and experienced in litigating complex cases and large class actions, including wage and hour cases.

154. Camacho will fairly and adequately represent and protect the interests of the Class Members.

155. A class action is superior to other available means for the fair and efficient adjudication of this controversy.

156. Individual joinder of all proposed Class Members is not practicable, and questions of law and fact common to the Class predominate over any questions affecting only individual Class Members.

157. Each proposed Class Members has been damaged and is entitled to recovery by reason of CSE's illegal policies and/or practices.

158. Class action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system.

159. Alternatively, the Class may be certified because the prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual members of the Class which would establish incompatible standards of conduct for CSE.

160. If each individual Class Member were required to file an individual lawsuit, CSE would necessarily gain an unconscionable advantage because CSE would be able to exploit and overwhelm the limited resources of each Class Member with CSE's vastly superior financial legal resources.

161. Requiring each individual Class Member to pursue an individual remedy would also discourage the assertion of lawful claims by the Class Members who would be disinclined to pursue these claims against CSE because of an

appreciable and justifiable fear of retaliation and permanent damage to their lives, careers, and well-being.

162. The proposed Class Members may properly receive notice of the class action by mail, email, and/or by text message, and the contact information needed to facilitate such notice is readily ascertainable from CSE's personnel records.

## Count I
## Failure to Pay Overtime Under the FLSA
## (FLSA Collective Action)

163. Camacho realleges and incorporates all other paragraphs by reference.

164. Camacho brings his FLSA claim as a collective action pursuant to 29 U.S.C. § 216(b).

165. CSE misclassified Camacho and the Collective Members as exempt from overtime when these workers are actually non-exempt and eligible to earn overtime wages under the FLSA.

166. CSE has violated, and is violating, Section 7 of the FLSA, 29 U.S.C. § 207, by employing non-exempt employees (Camacho and the Collective Members) in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than 40 hours without compensating such employees for their work in excess of 40 hours per week at rates of not less than 1.5 times their regular rates of pay.

167. CSE knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Camacho and the Collective Members overtime compensation.

168. CSE's failure to pay Camacho and the Collective Members overtime compensation was neither reasonable, nor was the decision not to pay these employees overtime compensation made in good faith.

169. Accordingly, Camacho and the Collective Members are entitled to overtime wages under the FLSA in an amount equal to 1.5 times their regular rates of pay for all overtime hours worked, plus liquidated damages, attorneys' fees, costs, and post-judgment interest.

## COUNT II
## Failure to Pay Overtime Under California Law
## (Rule 23 Class Action)

170. Camacho realleges and incorporates all other paragraphs by reference.

171. Camacho brings his overtime claim under the California Labor Code and Wage Order(s) as a Rule 23 class action.

172. At all relevant time, CSE was Camacho's and Class Members' "employer" within the meaning prescribed in the Labor Code.

173. At all relevant times, CSE was subject to the Labor Code and applicable Wage Orders.

174. Labor Code § 510(a) provides as follows:

> Eight hours of labor constitutes a day's work. Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee. Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee.

175. IWC Wage Order 4-2001(3)(A)(1), & (3) states that employees:

> … shall not be employed more than eight (8) hours in any workday or more than 40 hours in any workweek unless the employee receives one and one-half (1½) times such employee's regular rate of pay for all hours worked over 40 hours in the workweek. Eight (8) hours of labor constitutes a day's work. Employment beyond eight (8) hours in any workday or more than six (6) days in any workweek is permissible provided the employee is compensated for such overtime at not less than … [o]ne and one-half (1½) times the employee's regular rate of pay for all hours worked in excess of eight (8) hours up to and including 12 hours in any workday, and for the first eight (8) hours worked on the seventh (7th) consecutive day of work in a workweek….

176. Labor Code § 1194(a) provides as follows:

> Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorneys' fees, and costs of suit.

177. Labor Code § 1198 makes it unlawful for employers to employ employees under conditions that violate the Wage Order.

178. Despite regularly working over 8 hours a day and/or 40 hours in a workweek as part of their normal and regular schedules, Camacho and the Class Members did not receive overtime compensation for all overtime hours worked.

179. Despite occasionally working over 12 hours a day with CSE's knowledge of such work, Camacho and the Class Members did not receive double time compensation for such hours worked.

180. CSE's pattern, practice, and uniform administration of corporate policy and practices regarding illegal employee compensation is unlawful and entitles

Camacho and the Class Members to recover the unpaid balance of the full amount of overtime wages owed, including 1.5 times and double time wages, an equal amount as liquidated damages, interest at the highest applicable rates, and attorneys' fees and costs.

## COUNT III
## Failure to Authorize, Permit, and/or Make Available Meal and Rest Periods Pursuant to California Labor Code §§ 226.7 and 512 (Rule 23 Class Action)

181. Camacho realleges and incorporates all other paragraphs by reference.

182. Camacho brings his meal and rest period claim under the California Labor Code and Wage Order(s) as a Rule 23 class action.

183. CSE routinely does not make meal periods available to Camacho and the Class Members.

184. Despite long days regularly lasting in excess of 8, 10, and sometimes 12 hours, Camacho and the Class Members are often unable to take a meal break, are often prevented from timely taking a meal break, are otherwise subject to interruption during their meal breaks, and are frequently interrupted during their attempted meal breaks.

185. Camacho and Class Members are not paid one hour of premium pay for the missed breaks as required by California law.

186. Similar to meal periods, CSE regularly fails to make rest periods available to Camacho and the Class Members. When available, if ever, the rest periods are often not compliant. Instead, the rest periods are generally untimely or short.

187. Camacho and the Class Members do not receive premium pay for their missed rest periods as required by California law.

188. Labor Code §§ 226.7 and 512, and the applicable Wage Orders, require CSE to authorize and permit meal and rest periods to their employees.

189. Labor Code §§ 226.7 and 512, and the applicable Wage Orders, prohibit employers like CSE from employing an employee for more than 5 hours without a meal period of not less than 30 minutes, and from employing an employee more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes.

190. Labor Code § 226.7, and the applicable Wage Orders, also requires employers like CSE to authorize and permit employees to take 10 minutes of net rest time per 4 hours (or major fraction thereof) of work, and to pay employees their full wages during those rest periods.

191. Unless the employee is relieved of all duty during the 30-minute meal period and the 10-minute rest period, the employee is considered "on duty" and the meal or rest period is counted as time worked under the applicable Wage Orders.

192. Under Labor Code § 226.7(b), and the applicable Wage Orders, an employer who fails to authorize, permit, and/or make available a required meal period must, as compensation, pay the employee 1 hour of pay at the employee's regular rate of compensation for each workday that the meal period was not authorized or permitted.

193. Similarly, an employer must pay an employee denied a required rest period 1 hour of pay at the employee's regular rate of compensation for each workday

that the rest period was not authorized, permitted, and/or not made available.

194. Despite these statutory requirements, CSE has knowingly and willfully refused to perform its obligations to authorize, permit, and/or make available to Camacho and Class Members the ability to take the off-duty meal and rest periods to which they are entitled.

195. CSE has also failed to pay Camacho and the Class Members 1 hour of pay for each off-duty meal and/or rest period that they are denied.

196. As a proximate result of the aforementioned violations, Camacho and the Class Members have been damages in an amount according to proof at time of trial.

197. CSE's conduct described herein violates Labor Code §§ 226.7 and 512.

198. Pursuant to Labor Code § 226.7(b), Camacho and the Class are entitled to compensation for CSE's failure to authorize, permit, and/or make available meal and rest periods, plus interest, attorneys' fees, expenses and costs of suit.

## COUNT IV
## Failure to Provide Accurate Itemized Wage Statements Pursuant to Labor Code § 226 (Rule 23 Class Action)

199. Camacho realleges and incorporates all other paragraphs by reference.

200. Camacho brings his wage statement claim under the California Labor Code and Wage Order(s) as a Rule 23 class action

201. CSE does not provide Camacho and the Class Members with accurate itemized wage statements as required by California law.

202. Labor Code § 226(a) provides:

> An employer, semimonthly or at the time of each payment of wages, shall furnish to his or his employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately if wages are paid by personal check or cash, an accurate itemized statement in writing showing: (1) gross wages earned, (2) total hours worked by the employee, except as provided in subdivision (j), (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of his or his social security number, (8) the name and address of the legal entity that is the employer and, if the employer is a farm labor contractor, as defined in subdivision (b) of Section 1682, the name and address of the legal entity that secured the services of the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee .... The deductions made from payments of wages shall be recorded in ink or other indelible form, properly dated, showing the month, day, and year, and a copy of the statement or a record of the deductions shall be kept on file by the employer for at least three years at the place of employment or at a central location within the State of California.

203. IWC Wage Order 4-2001(7) establishes similar wage statement requirements.

204. Labor Code § 226(e) provides:

> An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees.

205. Camacho seeks to recover actual damages, costs and attorneys' fees

under this section.

206. CSE does not provide timely, accurate itemized wage statements to Camacho and the Class Members in accordance with Labor Code § 226(a), as well as the IWC Wage Orders.

207. The wage statements CSE provides their employees like Camacho and the Class Members do not accurately reflect the actual hours worked, actual gross wages earned, premium pay earned, or actual net wages earned.

208. CSE is liable to Camacho and the Class Members as alleged herein for the amounts described above, with interest thereon.

209. Camacho and the Class Members are also entitled to an award of attorneys' fees and costs pursuant to Labor Code § 226(e).

## COUNT V
**Waiting Time Penalties Pursuant to Labor Code §§ 201-203**
**(Rule 23 Class Action)**

210. Camacho realleges and incorporates all other paragraphs by reference.

211. Camacho brings his waiting time penalties claim under the California Labor Code and Wage Order(s) as a Rule 23 class action

212. CSE did not provide Camacho and the Class Members with all their wages when due under California law after their employment with CSE ended.

213. Labor Code § 201 provides: "If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately."

214. Labor Code § 202 provides: "If an employee not having a written contract for a definite period quits his or his employment, his or his wages shall

become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or his intention to quit, in which case the employee is entitled to his or his wages at the time of quitting."

215. Labor Code § 203 provides, in relevant part:

> If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days.

216. Camacho and some of the Class Members left their employment with CSE during the statutory period, at which time CSE owed them unpaid wages.

217. These earned, but unpaid, wages derive from the unpaid overtime pay and premium pay owed by CSE.

218. CSE willfully refused and continues to refuse to pay Camacho and the Class Members all wages due and owing to them, in the form of overtime pay and premium pay, upon the end of their employment as a result of CSE's misclassification scheme.

219. As a result of CSE's actions, Camacho and the Class Members have suffered and continue to suffer substantial losses, including lost earnings and interest.

220. CSE's failure to pay Camacho and Class Members the wages due and owing constitute a violation of Labor Code §§ 201-202. As a result, CSE is liable to Camacho and Class Members for all penalties owing pursuant to Labor Code §§ 201-203.

221. Additionally, Labor Code § 203 provides that an employee's wages will continue as a penalty up to 30 days from the time the wages were due. Therefore, Camacho and Class Members are entitled to waiting time penalties, plus interest.

## COUNT VI
## Violation of California Business and Professions Code §§ 17200 *et seq.*
## (Rule 23 Class Action)

222. Camacho realleges and incorporates all other paragraphs by reference.

223. Camacho brings his UCL claim under the California Labor Code and Wage Order(s) as a Rule 23 class action

224. California Business and Professions Code § 17200, *et seq.*, prohibits unfair competition in the form of any unlawful, unfair, or fraudulent business acts or practices.

225. Business and Professions Code § 17204 allows a person injured by the unfair business acts or practices to prosecute a civil action for violation of the UCL.

226. Labor Code § 90.5(a) states it is the public policy of California to vigorously enforce minimum labor standards in order to ensure employees are not required to work under substandard and unlawful conditions, and to protect employers who comply with the law from those who attempt to gain competitive advantage at the expense of their workers by failing to comply with minimum labor standards.

227. Beginning at an exact date unknown to Camacho, but at least since the date of 4 years prior to the filing of this Action, CSE has committed acts of unfair competition as defined by the UCL, be engaging in the unlawful, unfair, and fraudulent business acts and practices described in this Complaint, including, but not

limited to:

a. Violations of Labor Code § 510 and IWC Wage Order 4-2001 pertaining to overtime;

b. Violations of Labor Code §§ 226.7 and 512 and Wage Order 4-2001 pertaining to meal and rest periods;

c. Violations of Labor Code § 226 regarding accurate, timely itemized wage statements; and

d. Violations of Labor Code §§ 201-203 pertaining to waiting time penalties.

228. The violations of these laws and regulations, as well as the fundamental California public policies protecting wages, serve as unlawful predicate acts and practices for purposes of Business and Professions Code §§ 17200, *et seq*.

229. The acts and practices described above constitute unfair, unlawful and fraudulent business practices, and unfair competition, within the meaning of Business and Professions Code §§ 17200, *et seq*. Among other things, the acts and practices have taken from Camacho and the Class Members wages rightfully earned from them, while enabling CSE to gain an unfair competitive advantage over law-abiding employers and competitors.

230. Business and Professions Code § 17203 provides that a court may make such orders or judgments as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition.

231. Injunctive relief is necessary and appropriate to prevent CSE from repeating the unlawful, unfair, and fraudulent business acts and practices alleged above.

232. As a direct and proximate result of the aforementioned acts and

practices, Camacho and the Class Members have suffered a loss of money and property, in the form of unpaid wages which are due and payable to them.

233. Business and Professions Code § 17203 provides that the Court may restore to any person in interest any money or property which may have been acquired by means of such unfair competition.

234. Camacho and the Class Members are entitled to restitution pursuant to Business and Professions Code § 17203 for all wages and payments unlawfully withheld from them during the 4-year period prior to the filing of this Complaint.

235. Camacho's success in this action will enforce important rights affecting the public interest and in that regard Camacho sues on behalf of herself as well as others similarly situated.

236. Camacho and the Class Members seek and are entitled to unpaid wages, declaratory and injunctive relief, and all other equitable remedies owing to them.

237. Camacho herein takes upon himself enforcement of these laws and lawful claims. There is a financial burden involved in pursuing this action, the action is seeking to vindicate a public right and it would be against the interests of justice to penalize Camacho by forcing him to pay attorneys' fees from the recovery in this action.

238. Attorneys' fees are appropriately awarded to Camacho pursuant to Code of Civil Procedure § 1021.5 and otherwise.

## JURY DEMAND

239. Camacho hereby demands a jury trial on all claims and issues for which Camacho is entitled to a jury.

## PRAYER FOR RELIEF

WHEREFORE, Camacho, individually and on behalf of the Salaried Employees, requests the following relief:

1. For an order finding that Count I in this Complaint may be maintained as a collective action pursuant to 29 U.S.C. § 216(b), and that prompt notice of this action be issued to potential members of the Collective, apprising them of the pendency of this action and permitting them to assert their FLSA claims;

2. For an order equitably tolling the statute of limitations for the potential members of the FLSA Collective;

3. For an order finding that the Counts II through VI in this Complaint may be maintained as a class action pursuant to Federal Rule of Civil Procedure 23;

4. Damages and restitution according to proof at trial for all unpaid wages and other injuries, as provided by the FLSA, California Labor Code, and California Business and Professions Code;

5. For a declaratory judgment that CSE violated the FLSA, California Labor Code, California law, and public policy as alleged herein;

6. For a declaratory judgment that CSE violated the California Business and Professions Code §§ 17200, *et seq.*, as a result of the aforementioned violations of the California Labor Code;

7. For preliminary, permanent, and mandatory injunctive relief prohibiting CSE, their officers, agents, and all those acting in concert with them from committing in the future those violations of law herein alleged;

8. For an equitable accounting to identify, locate, and restore to all current and former employees the wages they are due, with interest thereon;

9. For an order awarding Camacho and Salaried Employees compensatory damages, including lost wages, earnings, liquidated damages, and other employee benefits, restitution, recovery of all money/property, actual damages, and all other sums of money owed to Camacho and Salaried Employees,

together with interest on these amounts according to proof;

10. For an order awarding Camacho and Class Members all penalty wages, statutory damages, and/or civil penalties pursuant to the California Labor Code, and the laws of the State of California, with interest thereon;

11. For an order awarding reasonable attorneys' fees as provided by the FLSA, California Labor Code, California Code of Civil Procedure § 1021.5, the laws of the State of California, Federal Rule of Civil Procedure 23(h), and/or other applicable law;

12. For all costs of suit; and

13. For such other and further relief as this Court deems just and proper.

Date: November 14, 2025

Respectfully submitted,

**LAUREL EMPLOYMENT LAW**

*/s/ William M. Hogg*
Joshua I. White
William M. Hogg

*Counsel for Camacho & the Salaried Employees*